UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WLC COMMERCIAL PROPERTY SERVICES, INC., | |
| Plaintiff, | Civil Case No. 17-12270-FDS |
| v. | |
| WAL-MART STORES, INC., | |
| Defendant. | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

SAYLOR, J.

This is an action for breach of contract. Plaintiff WLC Commercial Property Services, Inc., contends that it entered into an oral contract with defendant Wal-Mart Stores, Inc., under which it gave Wal-Mart a discount on a snow-removal contract for the 2014-2015 snow season in exchange for a written contract covering the next two seasons. Wal-Mart terminated the written contract after the second season. Wal-Mart contends that the written contract contained a termination clause, which it properly invoked, and that therefore this action must be dismissed.

Because the written contract controls, and because it did contain a termination clause, Wal-Mart properly terminated the contract. Furthermore, and in any event, the statute of frauds bars enforcement of the claimed oral contract. Defendant's motion to dismiss will therefore be granted.

## I.     Background

### A.     Factual Background

The following facts are set forth as alleged in the amended complaint.

In 2014, Wal-Mart Stores, Inc., opened a new store at 770 Broadway in Saugus, Massachusetts. (Am. Compl. ¶ 6). The store manager at that time was Mark Gullotti. (*Id.* ¶ 7). At some point, Gullotti and WLC Commercial Property Services, Inc., orally agreed that WLC would provide snow and ice removal services for the store for the 2014-2015 snow season (that is, October 2014 through May 2015). (*Id.* ¶ 7).

According to the complaint, WLC offered Gullotti two payment options. (*Id.* ¶ 11). Under Option 1, Wal-Mart could pay on a "per event" basis for all the services it actually used. (*Id.* ¶ 12). Under Option 2, Wal-Mart could pay a flat fee of $140,000 for the season if Wal-Mart also agreed to retain WLC for the 2015-2016 and 2016-2017 seasons at $140,000 per season. (*Id.* ¶ 13). Before Gullotti selected a payment option, and before he could memorialize the agreement in writing (which he had promised to do), he "went on a leave of some nature and was unavailable" for the duration of the 2014-2015 season. (*Id.* ¶¶ 10-11).

Nevertheless, WLC provided snow-removal services to Wal-Mart for that season. (*Id.* ¶ 14).[1] Gullotti returned in the spring of 2015, and the parties resumed negotiations. (*Id.* ¶ 15). Because the season had been completed, the per-event price for 2014-2015 was known, and came to $280,000. (*Id.* ¶ 16). Gullotti understandably chose pricing Option 2, paid WLC $140,000 for the 2014-2015 season, and agreed to contract with WLC for the next two seasons. (*Id.*). No such contract, however, was executed at that time.

A new store manager, Brendan Quirk, took over from Gullotti in the summer of 2015. (*Id.* ¶ 17). WLC negotiated the contract for the 2015-2016 and 2016-2017 seasons with

---

[1] The Court takes judicial notice of the fact that the 2014-2015 winter had exceptionally high snowfall. David Abel & Niko Emack-Bazelais, *Boston's Winter Vaults to Top of Snowfall Records*, BOSTON GLOBE (Mar. 15, 2013), http://www.bostonglobe.com/metro/2015/03/15/parade-day-snow-but-snowiest-winter-record-unlikely-today/BCxfh7yPtIrxtHVzty5sPM/story.html; Jon Erdman, *New England Record Snow Tracker: Boston Breaks All Time Seasonal Snow Record in 2014-2015*, WEATHER.COM (Mar. 23, 2015 5:00 AM EDT), https://weather.com/news/news/new-england-boston-record-snow-tracker.

2

Stephanie Garman, the Facilities Manager at Wal-Mart's headquarters. (*Id.* ¶ 18). Eventually, on October 20, 2015, Wal-Mart awarded the contract to WLC. (*Id.* ¶ 18, Ex. 1). The written contract was executed by Michael Weiss for WLC on October 31, 2015, and by Quirk for Wal-Mart on November 6, 2015. (*Id.* ¶ 18, Ex. 2).

The written contract provided, in part:

> This Scope of Work shall begin on the first day of the Winter Season, October 1st, 2015, and terminate on the last day of the Winter Season, May 31st, 2017 (the "Term"). This Scope of Work may be terminated by Walmart or by [WLC] at any time upon 15 days' written notice to the other party. If the Agreement or this Scope of Work is terminated before the end of the Term, Walmart shall only be liable to pay [WLC] for Services provided before the effective date of termination.

(*Id.* Ex. 2 ¶ 1). The contract provided for a price of $139,000 per season. (*Id.* Ex. 2 ¶ 6).

On January 25, 2016—that is, midway through the 2015-2016 season—Quirk sent a termination notice to WLC. (*Id.* Ex. 3). Quirk later reaffirmed the contract through the end of the 2015-2016 season, and WLC continued to perform snow-removal services through the end of that season. (*Id.* ¶¶ 21-22). Prior to the start of the 2016-2017 season, on September 19, 2016, WLC received another termination notice, terminating the contract as to the 2016-2017 season. (*Id.* ¶ 23, Ex. 4).

### B. Procedural Background

Plaintiff filed its original complaint in this case in Massachusetts Superior Court on October 2, 2017, and an amended complaint two days later. The amended complaint contains three counts: (1) breach of contract; (2) unjust enrichment; and (3) violation of Mass. Gen. Laws ch. 93A. Defendant timely removed the case to this court, and has now moved to dismiss the complaint for failure to state a claim.

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

3

give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted).

### III. Analysis

#### A. Count 1: Breach of Contract

Plaintiff does not dispute that the written contract, which covered the 2015-2016 and 2016-2017 seasons, contained a termination clause that was properly invoked by defendant. (Pl. Opp. at 2, 6). It bases its claim for breach of contract on a previous oral contract, which it contends covered all three seasons and entitles it to lost profits for the 2016-2017 snow season. (Am. Compl. ¶ 28). That claim fails for multiple reasons.

First, the oral contract was entirely superseded by the written agreement. The written agreement does not contain a merger or integration clause.[2] However, even where an agreement

---

[2] A merger clause was present in an e-mail from Garman to plaintiff, and not contained in the written agreement signed by the parties. (Am. Compl. Ex. 1 at 1 (e-mail awarding contract stating "[a]ll other snow scopes of work, quotes, written or verbal agreements, contracts, past or future agreements are now terminated and replaced

4

is not *completely* integrated—and therefore a "complete and exclusive statement of the terms of the agreement," Restatement (Second) of Contracts § 210(1) (1981)—it may still be *partially* integrated, thereby "constituting a final expression of one or more terms of an agreement," *id.* § 209(1). *See Chambers v. Gold Medal Bakery, Inc.*, 83 Mass. App. Ct. 234, 242 (2013) (using the Second Restatement to explain integration).

A partially integrated agreement "discharges prior agreements to the extent that it is inconsistent with them." Restatement (Second) of Contracts § 213(1); *Chambers*, 83 Mass. App. Ct. at 242; *see also Fairfield 274-278 Clarendon Trust v. Dwek*, 970 F.2d 990, 993 (1st Cir. 1992) ("Evidence of prior or contemporaneous oral agreements cannot be admitted to *vary* or *modify* the terms of an unambiguous written contract."); *Sax v. DiPrete*, 639 F. Supp. 2d 165, 170 (D. Mass. 2009); *Gifford v. Gifford*, 354 Mass. 247, 249 (1968) ("The existence of an inconsistent oral agreement relating to the same subject matter cannot be shown by parol."); *McCuster v. Geiger*, 195 Mass. 46, 53 (1907) ("It is true that an agreement by parol collateral to the written agreement between these parties and on a subject distinct from that which is provided for by the latter may be proved; but this doctrine cannot be extended to contemporaneous oral agreements on their face inconsistent with what is written, and so cannot avail the plaintiff.").

Here, the written contract specifically lays out price and termination terms concerning the 2015-2016 and 2016-2017 seasons, without any gaps or reference to any prior agreement. Those terms directly contradict the terms of the claimed oral agreement: under the alleged terms of pricing Option 2, defendant was required to pay $140,000 for snow-removal services for each of the 2015-2016 and 2016-2017 seasons, without the option to terminate. But the written contract

---

with the 2015 snow removal scope of work")). Plaintiff maintains that it did not agree to the merger clause, and the Court will take that allegation as true for the purposes of this motion.

renegotiated those very terms, such that the parties agreed to perform the services for $139,000 per season and agreed that either side could terminate the contract with advance notice. Furthermore, plaintiff agreed that in the event of a termination, defendant would only be liable to pay for services rendered prior to termination—making clear that, at least for the 2015-2016 and 2016-2017 seasons, the price of the contract was not dependent on the plaintiff being paid in full for both seasons.

Both contracts cannot be operable; the only reasonable conclusion is that the parties intended the later, written contract to be the final statement of the price and termination terms, and that the agreement is at least partially integrated as to those terms. Plaintiff cannot agree to new terms and then, when defendant complies with those terms, insist on enforcement of old terms incompatible with the terms to which it subsequently agreed.

Furthermore and in any event, the Massachusetts statute of frauds bars the enforcement of any alleged oral contract. Under the statute, "[n]o action shall be brought . . . [u]pon an agreement that is not to be performed within one year from the making thereof . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Mass. Gen. Laws ch. 259, § 1. Plaintiff contends that the oral contract was "for the three total years of snow removal," and provided for three seasons at $140,000 per season. (Pl. Opp. at 2, 4). Therefore, it could not have been performed within one year of its making and is barred by the statute of frauds. *See, e.g.*, *Lahlou v. Daley*, 874 F. Supp. 2d 8, 11 (D. Mass. 2012).[3]

---

[3] If instead the oral contract is considered a contract to perform snow removal for the 2014-2015 season in exchange for $140,000 and the promise to contract for the next two seasons, then the agreement could be performed within one year. But if the first contract is read that way, there is no breach. Defendant *did* contract with plaintiff

6

In summary, the breach-of-contract claim will be dismissed for failure to state a claim.

B.     **Count 2:  Unjust Enrichment**

Plaintiff claims unjust enrichment damages in the amount of $140,000 on the theory that it gave defendants a substantial discount for the 2014-2015 snow season in exchange for a multi-year contract, which was then terminated. (Am. Compl. ¶¶ 29-30).

Plaintiff may well have been treated unfairly. But the problem is that plaintiff in fact obtained a multi-year contract in exchange for a discounted price, and at the very same time agreed to a termination clause. Plaintiff does not argue that the terms of the written contract were unconscionable or coercive, or that the termination clause was improperly invoked. It is not unjust to hold a party to the terms of a contract to which it agreed.

Unjust enrichment is an equitable doctrine that applies when there is no enforceable contract. *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 641 (2013); *In re Lupron Mktg. Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003). Plaintiff contends that its recovery lies under the oral contract that, as discussed, is unenforceable. But there was an enforceable written contract covering this exact subject matter. That contract sets out the terms on which plaintiff agreed to provide services for the second two snow seasons, and would provide plaintiff an adequate remedy at law for a breach of those terms.

C.     **Count 3:  Chapter 93A**

Finally, plaintiff contends that defendant's cancellation of the contract, allegedly knowing that plaintiff only agreed to a $140,000 price for the 2014-2015 season because it would also have defendant's business for the following two seasons, constituted an unfair and deceptive

---

for the next two years, as promised, although that contract contained a termination clause, which defendant properly invoked.

act or practice under Mass. Gen. Laws ch. 93A, § 11.

"[A] simple, or even intentional, breach [of contract] is insufficient in itself to constitute an unfair or deceptive trade practice under Chapter 93A." *City of Revere v. Boston/Logan Airport Assocs., LLC*, 416 F. Supp. 2d 200, 208-09 (D. Mass. 2005). In order to rise to the level of a Chapter 93A violation, "the breach must be both knowing and intended to secure 'unbargained-for benefits' to the detriment of the other party." *Id.* at 209 (quoting *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28, 34 (1st Cir. 1994)).

Here, however, there is not even a breach of contract. Plaintiff has not even alleged that defendant ever represented to it that the termination clause was just for show, or separately promised not to invoke it.[4] Rather, plaintiff concedes that the termination of the written contract was proper. There is nothing unfair or deceptive about terminating a contract according to its terms.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

Dated: February 27, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge

---

[4] The amended complaint says only: "Defendant Wal-Mart's actions in breaching their Contract with Plaintiff, WLC without cause or justification in Count I, and their refusal to pay for WLC's services as alleged in Count II, constitute a violation of Massachusetts General Laws Chapter 93A." (Am. Compl. ¶ 32).

8